-29-

At all times herein mentioned, Plaintiff was an employee within the meaning of M.G.L.Ch. 151B, § 4(1) protected against discrimination in employment on the basis of race, in that Plaintiff was a member of a protected and recognized minority group or category African American.

At all times material hereto, Defendant Rent-A-Center, Inc., was an employer within the meaning of M.G.L.Ch. 151B, § 4(1) and as such was prohibited from discriminating in employment decisions on the basis of race.

Plaintiff has been discriminated against by Defendants Rent-A-Center, Inc., Iverson, Costa and Bell and each of them, on the basis of race in violation of M.G.L.Ch. 151B, § 4(1). By the Defendants engaging in a course of conduct which included subjecting Plaintiff to wrongful discharge. This conduct further included pre-textual reasoning before the Massachusetts Commission Against Discrimination for terminating Plaintiff. Defendants further commiting fraud before that Massachusetts Commission Against Discrimination to conceal their acts of discrimination, providing untrue, misleading and unfavorable references and employment recommendations to potential and prospective employers seeking or verifying references of Plaintiff's.

As a proximate result of Defendants racial discrimination, Plaintiff has suffered and continues to suffer substantial losses incurred in loss of past and future earnings, bonuses, plus expenses and Attorney Fees incurred in attempting to obtain the benefits due Plaintiff.

As a further proximate result of the actions and conduct of Defendants, Plaintiff has suffered and incurred, and is suffering and incurring, serious harm and damage to Plaintiff's personal and professional reputation and credibility by Defendants subjecting Plaintiff to such treatment, with the untrue implicat-

-30-

ion to peers, co-worker and the Massachusetts Commission against Discrimination, and others in contact with Plaintiff that Plaintiff was less competent or trustworthy than others in Plaintiff's position.

As a further proximate result of Defendants actions, Plaintiff has suffered and continues to suffer severe and lasting embarrassment, humiliation and anguish, and other incidental and consequential damages and expenses, all to Plaintiff's damage in an amount according to proof.

As a result of the discriminatory conduct and actions of Fraud by the Defendants on the Massachusetts Commission Against Discrimination herein alleged, Plaintiff has no effective, adequate, or complete remedy at law, because Defendants continue to engage in wrongful practices alleged herein.

IV.     **PRAYER FOR RELIEF:**

In accordance with Massachusetts General Laws Chapter 30A, § 14(7). Plaintiff request the following relief.

(1). That Court set aside the decision of the Massachusetts Commission Against Discrimination, because the agency's decision and findings of lack of probable cause is clearly erroneous as a matter of law and unsupported by substantial evidence.

(2). That the court find that the action of Defendants Rent-A-Center, Inc., Iverson, Bell and Costa was racial Employment Discrimination in violation of M.G.L.Ch. 151B, § 4(1). And order the Defendant to pay back pay of $72,000.00 wages or loss of compensation;

(3). That liability be imposed upon the individuals Rent-A-Center, Inc., Iverson, Bell and Costa and each of them

-31-

(4). Award compensatory damages and emotional destress and punitive damages against each Defendant Rent-A-Center, Inc., Iverson, Bell and Costa in an amount to be determine by court:

(5). As a result of the Discriminatory Acts of Defendants herein alleged, Plaintiff is entitled to cost of suit, including reasonable Attorney Fee's.

Wherefore, Plaintiff request relief as hereinafter Provided.

*Marvin M. Smith*
Marvin M. Smith
2251A Washington Street
Newton, Massachusetts 02462



The Commonwealth of Massachusetts
Commission Against Discrimination

DOCKET NUMBER: 01130691
FILING DATE: 03-14-2001

EEOC/HUD NUMBER:
VIOLATION DATE: 03/02/01

**Name of Aggrieved Person or Organization:**
Marvin M. Smith
28 Irma Street
Dorchester, MA 02124
Telephone Number: (617) 822-0081

**Named is the employer, labor organization, employment agency, or state/local government agency who discriminated against me:**
Rent-A-Center
Human Resources
5700 Tennyson Parkway
Plano, TX 75024
Telephone Number: (617) 965-8682     No. of Employees: 20 +

Work Location: Jamaica Plain, MA

**Cause of Discrimination based on:**
Race, Color.
(Black (Non-Hispanic)).

**The particulars are:**
I, Marvin M. Smith, the Complainant believe that I was discriminated against by Rent-A-Center, on the basis of Race, Color. This is in violation of M. G. L. Chapter 151B S P.

I worked for Rent-A-Center since August 2000. I was hired into an account manager position. Initially that meant that I was in charge of delivery for my accounts. In January, I switched over to collections. I was given the toughest accounts in the store, making it almost impossible to "meet company standards." The two prior managers of these accounts, a white man and an hispanic man, also failed to meet company standards on these accounts and were removed from them. However, while the white worker received a raise and the hispanic a demotion, I was suspended and discharged. I feel that these actions were based on unlawful racial discrimination because I am black. I was one of only a few black workers there and my regional manager, Bill Costa, as well as my supervisors did not like me because I was not hispanic and did not speak spanish. I was retaliated against for taking off MLK Day. I was also not promoted while two hispanic workers who started after me were (Eric Costello and Robert Dilorsa). I feel that there was a pattern of racial discrimination there which favored hispanics and whites and eventually led to my discharge.

I swear or affirm that I have read this complaint and that it is true to the best of my knowledge, information and belief.

Notary Public: Keyette L Hibbs
My Commission Exp: July 26, 2004

Keyette S. Hibbs

**RAC** Rent-A-Center

**Coaching Discussion Plan For:** MARVIN   **Store #:** 1554

1. **Behavior Discrepancy** (What is the co-worker doing wrong or not doing right)
   Discrepancia de Conducta (¿Que es lo que el trabajador esta haciendo incorrectamente?)

   Failure to obtain company collection standards 2:00 PM Thurs 3/1 Rt 1 is opening @ 18.2 for Fri.

2. **Results of This Discrepancy** (Who / what is hurt, what is the cost / effect, etc.)
   Resultados de esta conducta (A quien o a que se causa daño, el costo / efecto, etc.)

   Store Revenue is affected

3. **Consequences To The Co-Worker If It Is Not Corrected** (List all possible / probable actions)
   Consecuencias al trabajador si no se corrige esta conducta (Haga lista de todas las acciones posibles / probables)

   Failure to Achieve Friday open of 11.9% by close of Business Today will result in suspension and possible termination.

4. **What Is The Desired Behavior** (What is expected and why?)
   Cual es la conducta deseada (Que es lo que se espera y por que?)

   Call & Document Route — obtain company standards for Card open and card close.

**Co-worker Comments / Comentarios del compañero de trabajo:**

I, _____ was given a copy of this discussion.   Date **3-1-01**
A mi, _____, me dieron una copia de esta discucion.   Fecha

Manager's Signature / Firma del Gerente   Co-worker's Signature / Firma del Trabajador

*If Co-worker refuses to sign, signature of witness   Witness Signature / Firma del Testigo
*Si el trabajador rehusa firmar, firma del testigo

RAC-CDP Rev 3/00

**CO-WORKER COPY**

The Commonwealth of Massachusetts
Commission Against Discrimination
1 Ashburton Place, Boston, MA 02108

Marvin M. Smith
28 Irma Street
Dorchester, MA 02124

03-14-2001

RE: Marvin M. Smith
vs.: Rent-A-Center
Docket Number: 01130691
EEOC/HUD Number:



Dear Mr. Smith:

Please be advised that the Massachusetts Commission Against Discrimination (MCAD) has assigned Jeannine Rice to investigate the above referenced complaint of discrimination. The Commission's investigator will review the allegations in the complaint and will keep the parties informed of developments arising from that investigation.

In order to reduce the time necessary to investigate and resolve complaints of discrimination, the MCAD schedules an Investigative Conference with the parties shortly after the complaint is filed. Information about the Conference is included with this notice.

An Investigative Conference regarding the above complaint will be held at the Commission's Office, 1 Ashburton Place, Boston, MA 02108 at 10:30AM on 04-17-2001. You are required to attend this conference and your failure to do so will be taken as representing a lack of interest on your part in pursuing this claim.

One important purpose of this conference will be to determine whether the parties are willing to consider a rapid, informal and voluntary resolution of this dispute. The Commission encourages such resolution as an alternative to the often lengthy and expensive litigation process.

If you have any questions pertaining to the Investigative Conference, please contact Jeannine Rice at (617) 727-3990 Ext. 26091.

Very truly yours,


Jeannine Rice
Investigator
Form: MCAD Complaint; Ltr.to.Cpt

# WINSTEAD

May 3, 2001

direct dial: 214.745.5618
rfriedman@winstead.com

*Fax No.: 617-720-6053*
*and by Federal Express*



Ms. Jeannine Rice, Investigator
Massachusetts Commission Against Discrimination
1 Ashburton Place
Boston, MA 02108

    Re:   *Marvin M. Smith v. Rent-A-Center*
           Docket No: 01130691

Dear Ms. Rice:

As I previously advised the Commission, this firm represents Rent-A-Center in the above-referenced matter. Please direct all future correspondence to me. The following constitutes Respondent's position statement concerning the charge of discrimination filed by Marvin M. Smith.

## POSITION STATEMENT

    A.    <u>Allegations</u>

Complainant charges Rent-A-Center ("Respondent" or "RAC") with race and color discrimination in violation of M.G.L. Chapter 151B.

Smith states that Respondent hired him as an account manager in August 2000. He complains that in January 2001, RAC moved him from deliveries to collections. He alleges that RAC gave him the "toughest accounts" in the store, which made it almost impossible to meet company standards. Smith claims that the two individuals that had this route prior to him also failed to meet company standards but were not terminated. Rather, he claims that the "white" individual was promoted and the "Hispanic" individual was demoted.

Complainant alleges that these actions were based on his race, Black. In support of this claim, he states that he was one of only a few Black workers in the store and his "regional manager, Bill Costa, as well as [his] supervisors did not like [him] because [he] was not Hispanic and did not speak Spanish." Smith further alleges that the company retaliated against him for taking off Martin Luther King day. Finally, he alleges that he was not promoted while two Hispanic workers who started after him were.

Smith concludes with the allegation that there was a pattern of racial discrimination at the store that favored Hispanics and whites and eventually led to his discharge.

---

5400 RENAISSANCE TOWER | PH 214.745.5400 | WINSTEAD SECHREST & MINICK | Dallas, Houston,
1201 ELM STREET | FAX 214.745.5390 | Attorneys and Counselors | Austin, Fort Worth,
DALLAS, TEXAS 75270 | WINSTEAD.COM | A Professional Corporation | Mexico City

Jeannine Rice
May 3, 2001
Page 2

B. <u>Response</u>

Rent-A-Center vehemently denies discriminating against Smith in anyway whatsoever. The evidence will show that Rent-A-Center terminated Smith, after repeated warnings, for poor performance and insubordination and after Smith abandoned his job. Smith's sworn complaint distorts and mischaracterizes significant factual issues.

Smith's attempts to deceive the MCAD are not surprising. Smith has a history of deceitful and anti-social behavior. The Rent-A-Center employment application asks applicants if they have ever been convicted of a felony. Although an affirmative answer does not necessarily disqualify an applicant, Rent-A-Center expect a truthful answer with an explanation of the event. Significantly, the application states that failure to provide truthful answers may result in immediate termination.

Smith did not respond truthfully to this question. He has been convicted of a felony, namely first degree murder, armed robbery, assault, and theft (Exhibit "A"). Therefore, Mr. Smith started his employment relationship with RAC with a lie concerning his background. This robs him of any credibility. Now, Smith seeks to continue his pattern of deception by leveling false allegations against RAC. The evidence will show that Smith's allegations are without factual basis.

Complainant's unsupported claim that RAC gave him the toughest accounts in the store is nonsense. Store management divides accounts so that all routes are basically even. Smith's claim is merely an attempt to shirk responsibility for his inability to manage his accounts. Significantly, however, Smith acknowledges in his Charge that he did not meet company standards. Therein lies the legitimate reason for his discharge.

His claim that other, non Black, individuals also did not meet company standards is deceptive. The first "white" individual to whom Smith refers was a management employee who was temporarily assigned the route only to learn about store operations. Moreover, his performance in collections far exceeded Smith's.

Rent-A-Center cannot identify the second individual to whom Smith refers. However, Rent-A-Center treats similarly situated individuals equally. Moreover, Smith's claim that it is nearly impossible to meet company standards is untrue. While it is true Smith <u>did not</u> meet company standards, other individuals on the same route <u>have</u> met company standards.

Smith's conclusory statement that RAC discriminated against him because he is Black is completely without merit. He attempts to bolster this allegation by alleging that he was one of only a few Black workers in the store and his "regional manager, Bill Costa, as well as [his] supervisors did not like [him] because [he] was not Hispanic and did not speak Spanish." The allegation assumes that Bill Costa and presumably Smith's former store manager Mel Perdomo, and Kevin Bell, the manager who terminated Smith, prefer other Hispanics. However, neither Bill Costa, Mel Perdomo or Kevin Bell are Hispanic. Mr. Costa is of Portuguese descent, Mr. Perdomo is Italian American and Kevin Bell is Anglo. Moreover, neither Mr. Costa or Mr. Bell speak Spanish. Accordingly, this allegation appears to be a complete fabrication.

Jeannine Rice
May 3, 2001
Page 3

Smith's allegations regarding the small number of African Americans in the store is equally baseless. One of Smith's managers at the store where he worked was Keith Bodder, an African American individual. During Smith's employment with RAC, Bodder received a promotion to a higher management position. Mr. Bodder is still employed in the very store where Smith worked. Clearly, if RAC wanted to discriminate against Blacks in the store, it would not have promoted another Black employee. Why would RAC only target Smith for race discrimination?

The truth is that Smith could not perform his job and he had a bad attitude about constructive criticism. During his employment with RAC, he received numerous oral warnings about poor performance. On one occasion, after market manager Costa coached Smith about performance issues, Smith stormed out of the store. RAC thought that Smith had abandoned his job. However, shortly after this incident, Smith's wife called the store and asked that the store take him back. At this time, RAC could have legitimately terminated Smith, but instead gave Smith another opportunity to succeed. Unfortunately, Smith did not improve his performance or his attitude.

Accordingly, on March 1, 2001, RAC presented Smith with a written warning regarding poor performance (Exhibit "B"). The *Coaching Discussion Plan* clearly warned Smith that failure to achieve improved results would "result in suspension and possible termination." Consistent with his prior reaction to constructive criticism, Smith proceeded to make derogatory comments about the company and he once again abandoned his job. The following Monday, Smith did not show up for work and Rent-A-Center suspended him, and on March 9, 2001, terminated Smith (Exhibit "C"). After RAC replaced Smith, collections in his former route dramatically improved.

RAC did not retaliate against Smith for taking Martin Luther King Day off. In fact it does not appear that Smith took Martin Luther King Day as a vacation day, but rather he scheduled the day to coincide with his regular day off. As with Smith's other allegations, he offers no credible evidence to support this allegation. In fact, he does not even state how RAC retaliated against him. How RAC retaliated against Smith for taking Martin Luther King Day off in January, by firing him in March for poor performance, is a mystery.

Finally, Smith's allegation that RAC discriminated against him by not promoting him but promoting Hispanic workers who started after him, is equally preposterous. RAC does not promote workers with a track record of poor performance, like Mr. Smith. RAC promoted Eric Costello and Robert Dilorsa because they performed well in their respective positions, not because they are Hispanic. In contrast, Smith did not perform well. He can offer absolutely no evidence to show that he was qualified for a promotion. As previously stated, Smith consistently failed to meet company standard with regards to collections of his route. <u>This fact is uncontested</u>.

Ms. Rice, I believe the facts speak for themselves. Smith has a track record of deceitful behavior. He misrepresented his background on his employment application and he seeks to mislead the MCAD. Examples of his misrepresentations are numerous. Smith has concocted a story that his "Hispanic" supervisors did not like him because he was not Hispanic. Unfortunately, this claim fails because the supervisors that he refers to are not Hispanic. His claim that he suffered adverse employment action because he is Black is inconsistent with the facts. As stated herein, Keith

Jeannine Rice
May 3, 2001
Page 4


Bodder, an African American, was and continues to be a manager in the very store where Smith worked. Moreover, Bodder received a promotion while Smith worked in the store.

Smith's attempts to offer comparator evidence similarly fail. Those individuals that he seeks to compare himself with did not have performance issues. Moreover, they did not have bad attitudes like Smith, as evidenced by his storming out of the store and abandoning his job.

Clearly, Mr. Smith has failed to state a cause of action for discrimination. A company is entitled to make legitimate business decisions to terminate employees that are not performing up to standard. Mr. Smith's performance was consistently poor and he had a bad attitude. He seeks to use your good offices to cause trouble for the Company and perhaps to extract some sort of nuisance settlement from RAC. Don't let him trivialize the important safeguards that the federal government and state of Massachusetts have put in place to protect workers with legitimate complaints of discrimination.

                                                            Sincerely,

                                                            Robert F. Friedman

RFF:cob

cc:    Marvin M. Smith (via certified mail return receipt No: 7106 4575 1294 1225 0922)

## THE COMMONWEALTH OF MASSACHUSETTS
## COMMISSION AGAINST DISCRIMINATION

| | |
|---|---|
| MARVIN M. SMITH | § |
| | § |
| Charging Party, | § |
| | § |
| | §    MCAD Docket No.: 01130691 |
| | § |
| RENT-A-CENTER | § |
| | § |
| Respondent | § |

I, William Costa, Jr., affirm that the information contained in this position statement is true and correct to the best of my knowledge.

_____
WILLIAM COSTA, JR.

DALLAS_1134694506
05/03/2001 - 15237.706

Marvin M. Smith
28 Irma Street
Dorchester, Massachusetts 02124
(617) 965-8682



Jeannine Rice, Investigator
Massachusetts Commission Against Discrimination
One Ashburton Place
Boston, Massachusetts 02108

RE: Marvin M. Smith v. Rent-A-Center
    Docket No. 01130691

Dear Ms. Rice:

      In accordance with M.G.L. ch. 151B, sec. Petitioner now offers a reply to Respondents May 3, 2001. Sworn Position Statement{Attached Herein}

      Petitioner has complained in his March 2001. Complaint with Massachusetts Commission Against Discrimination that:

      (1). That Rent-A-Center had failed to promote Petitioner strictly based on race:

      (2). That Rent-A-Center had terminated Petitioner strictly based on race:

      (3). That Rent-A-Center had terminated Petitioner in retaliation for Petitioner's observance of the Martin Luther King Holiday.(See Exhibit-A)

-2-

Petitioner states, Respondents have offer no set of facts, which makes Petitioner statements under investigation untrue.

### (1). That Rent-A-Center Has Failed To Promote Petitioner Strictly Based On Race

Petitioner was hired at the Jamacia Plain Rent-A-Center(hereinafter JP RAC.) on or about June 2000, As a Account Manager. Immediately place in Transportation.

Petitioner states, that on the date Petitioner was hired, JP RAC. Staff was: Manager Mel Perdomo.(White) Assistant Manager Scott Balm,(White) Inside/Outside Assistant Pete (Last name unknown)(White)  N.1/ (IO hereinafter) I.O. Patrick(Last Name Unknown)(Jamacian)  Collections. Kevin(Last name unknown) Route One. Marcus(Last name unknown) (African American) Route Two. Lewis(Last name unknown)(Spanish). Transportation. Keith Bodden(Spanish) Jose(Last name unknown) Lawrence (African American) and myself.

During my entire employment at RAC. I arrived on time each day, Petitioner was scheduled work. 95% of the time,

---

N.1/ At most RAC.'s we very rarely use our full names; we answer the phones using our first names, as well our RAC name plates; worn on our shirt, has only our first names.

-3-

Petitioner was the last person to leave.N.2/ Petitioner equally always appeared at work in freshly press pants & shirt.

In Transportation, Petitioner was required to deliver and service Bedroom Sets; Living Room Sets, Televisions (As large as 64 Inches) Washing Machines & Dryers; Refrigerators to narrow apartments in some of the cities most violent areas. As late as 9 O'clock P.M.

My excellent work in Transportation, was praised by my Manager(s); all my co-workers. N.3/    But not worthy of a Promotion by Bill Costa, or the Bean counter.(See Exhibit-A Page 3 Paragraph 5.)

On or about August, September 2000. Bill Costa, Market Manager RAC. Began His Ethnic Cleansing of Non-Hispanic from JP RAC.

Eric Costello, was hired as a Account Manager on or about July, August 2000. Made Sale Leader shortly thereafter, at the JP. RAC. Replacing Peter(White Guy) our then IO.N.4/

On or about August, September 2000. additional Account Manager's were hired Robert De-larosa(Spanish) Rodrick(African American) both were assigned temporarily to Transportation.

---

N.2/ There is no paid over time at JP Rac. 40 Hours is all your paid for. But scheduled for Forty –Six hours. Petitioner did 50 Hours aweek.

---

N.3/ Petitioner request that Investigator's question stated Staff Supra. At 2. about charges of Petitioner's attitude and alleged "Anti-Social Behavior."

---

N.4/ Peter was released by RAC.

-4-

On or about August/September 2000. Rodrick(African American) Kevin (African American) Marcus (African American) were transferred to Hyde Park RAC. In addition Lawrence(African American was transferred to Roslindale RAC. To make room for the newly hired Staff.

Again, on or about August/September 2000. Robert De-Larosa(Spanish) was assigned to Route One in Collections. John(White Guy) N.5/ Keith Bodden(Spanish) N.6/ Was assigned to Route Two.

So collection managers are totally Spanish. With Keith Bodden, Lewis and Mr. De-Larosa.

Bill Costa, Ethnic cleansing continues in late September, with the transfer of Lewis a Spanish guy going to Roslindale RAC.

The transfer of Assistant Manager Scott Balm(White Guy) to Somerville, to make room for the very Spanish Hector. The transfer of IO Patrick(Jamacian) to Hyde Park, to make room for Doug Angle(White Guy) Additionally Mr.Costa, hired a Spanish only known to me as "Captain America." N.7/

---

N.5/John ended up transferred to South End RAC. Fired for allegedly Sexually harassing RAC client via Telephone.

---

N.6/ Additionally, Respondents claim a "Keith Bodder" an Assistant Manager at JP. RAC. As a "African American" is Error, Assistant Manager Keith Bodden, JP. RAC is Spanish. Bill Costa, knows this. Keith Bodden, is from Hunduras.

---

N.7/ Although I don't know this man's name, Bill Costa, won't soon forget him. Seems, someone sent him to a store in Springfield Massachusetts to pick-up Merchandize. He ended up in New York, believing he still hadn't reached Springfield.

-5-

Changes continued, with recently hired Assistant Manager (Hector) and one of the Jose's going to the South End RAC. With the Assistant Managers Brother (Sammy) Coming to the JP. RAC. No Assistant Manager was assigned at the JP. RAC, for several weeks.

On or about December 2000. Scott Balm, returned to the JP. RAC. As Assistant Manager. I believe Keith Bodden, was promoted to IO. And recently hired Donny Cruz (Donny Cruz was hired I believe in late November early December 2000) was assigned to collection. It is also in this month that Sammy(Spanish) The recent transfer from the South End RAC. Is also assigned to collections.

So in December 2000. we look at JP. RAC. Personnel, we have the Manager Mel Perdomo(White Man) Assistant Manager Scott Balm,(White Guy) IO Doug Angle(White Guy) IO Keith Bodden (Spanish) Sale Leader Eric Costello (Spanish) Collections, Route One Donny Cruz(Spanish) Route Two Sammy(Spanish) and Route Three Robert De-Larosa (Spanish). Transportation Myself(African American) Jose (Spanish) David (Spanish) Fred (African American)

The fact are, my attitude was excellent, my work unquestioned. My understanding of the JP. RAC. Computerized Systems was good. I was able to print rental agreements; Receive Merchandise into the Store, as well transfer Merchandise from the Store. But despite my knowledge, Petitioner remained in transportation.

On or about late December January 2001. Assistant Manager Scott Balm, was transferred to Roslindale RAC. As well Fred (African American) And again Petitioner requested a Promotion to IO.

-6-

Petitioners request for promotion to IO was denied, Petitioner was assigned to Route One. (The Route then held by Donny Cruz) Donny Cruz (Spanish) was assigned to transportation.

In January-February 2001 Eric Costello, Robert De-larosa and Sammy were promoted to IO's Despite the Stores, poor showing over those months. All hired after the Petitioner, All promoted within weeks of each other.

Finally, in late January early February 2001. Keith Bodden, is promoted to Assistant Manager over Doug Angle(Doug is of course White, and Keith Bodden is Spanish).

Respondents admit,(See Exhibit-C page Two paragraph 5) that assignment to route one, isn't based on meeting company standards, or for promotions, but training. Again, looking at the facts, it helps if your Spanish, if you want a promotion.

Doug Angle, was hired by Bill Costa, as a IO(Again See Exhibit-B) Mr. Angle, knew nothing about the Operation at JP. RAC.. Mr. Costa, stated in front of Petitioner and several others, that Mr. Angle would be Manager of his own RAC. Store, in a few months. This statement occurred in late November early December 2000. While Petitioner was loading a Truck at the JP. RAC. As well, Doug Angle, repeatedly told Petitioner, he was Assistant Manager at the JP. RAC. But when Petitioners Manager Mel Perdomo, suffered a injury in late January early February 2001. Bill Costa, made Keith Bodden(Spanish) Assistant Manager. It was only when Bill Costa and Regional Manager Roger Iverson, came to JP.RAC. after several questionable

-7-

questionable weeks.N.8/ of collections illegal filing of fake Rental Agreements, and missing Merchandise.

That Mr. Angle, confronted Bill Costa, about being passed over for the promotion of Assistant Manager. That Bill Costa, promoted Mr. Angle to Assistant Manager, with Keith Bodden, in charge of day to day operations. Mr. Angle, resigned over this matter in March 2001.

Petitioner request the Investigator interview both Mr. Angle and Regional Manager Roger Iverson, concerning this issue. The treatment of Mr. Angle, was classic Text Book Discrimination, based totally on race. And establishes a pattern as Petitioner, has claimed to be a victim of.

## (2). That Rent-A-Center Had Terminated Petitioner Strictly Based On Race

Petitioner incorporates all facts sworn in section 1 <u>Supra</u>. And all inference alleged.

Petitioner states, Respondents claim of Termination based on poor performance, failure to meet company

---

N.8/ JP. RAC. Had allegedly, been caught three times since the date of December 2000. The period JP. RAC. Won Store of the Month, filing fake Rental Agreement, we JP.RAC. became the joke of all RAC, by making large Sales on Saturday, and having large returns on Monday. So much so, Roger Iverson, came to the JP.RAC. Although threats of firings were made by Bill Costa, for proof of individuals involvement in the filing of these fake documents. No one was fired, despite direct evidence of such actions. Basically because the individuals were Spanish.

-8-

      Collection Standards(See Exhibit-B) is nothing more than a Red Herring, a attempt to hire their racial hiring practices at JP.RAC.

      First Route One, the Route Petitioner was assigned in January 2001. Hasn't been a manageable Route since who knows when. Respondents only acknowledgement of this fact, is found on page two of Exhibit-C Respondents Position Statement at paragraph 5. when they acknowledge in somewhat a coward way, that Doug Angle, A White Guy, hadn't met Company Standards either. But Respondents are armed with a excuse for this. "..the first "white" individual to whom smith refers was a Management Employee who was temporarily assigned the route only to learn about store operation. Moreover, his performance in collections far exceeded smith." Yeah, but what we wanted to know, did it meet company standards?

      Respondents wouldn't leave anyone wondering if Petitioners charge of Race base termination was correct.

      But what we do know, through Respondents omissions, is there couldn't be company standards applied to Route One, if it's used for training of Staff! Or this is the reason made for justifying not terminating or suspending Mr. Angle?

      But now Petitioner is left wondering what was the reasons for not suspending or firing the others? Namely, why wasn't Kevin(African American transferred to Hyde Park RAC. Earlier in the Ethnic cleansing) why wasn't he fired or suspended? I know Kevin, made it to Sales Leader at the South Boston RAC. I am reasonably certain he wasn't a manager at JP RAC. I don't know, if at Hyde Park, whether Kevin was on collections or not. Or what position he held. But Petitioner is certain, that Kevin was a account Manager at JP. RAC. And was a collection Manager