-9-

of Route One and he failed as all others, to close that Route One based on interferences, a failure to terminate clients Application of Company Standards he could not meet the closing number.(See Exhibit-D) He wasn't fired nor suspended.

Then we have Donny Cruz, he was hired months after Petitioner.(September-December 2000.) Place in Collection, assigned to Route One after Doug Angle's, "Training" or "Temporary" assignment. From December 200-January 2001. he didn't meet company standards, but wasn't fired nor suspended. But returned to transportation. It could also be , Donny Cruz was also a "Management employee who was temporarily assigned the Route only to learn about store operation " and possibly his "Performance in collection far exceeded Smith's." This could be the reason, for their lack of a response. But Petitioner stand by his original sworn statement. Petitioner was fired strictly based on race.

Petitioner states, were no Company Standards applied to Route One, that Bill Costa, had enforced. The proof is in the Performance of the Route and the Payment History of the Clients. And here is afew clients names to support further, the claim that Route One is/was one of the toughest route, and that no Company Standards were enforced upon it:
(1) Juana Frias: (2) Stephen Keith: (3) Ivan Hiram: (4) Lucille Gillenwater: (5) Olando Marcebo: (6) Hernandez Morales: (7) Cliff Singletary: (8) Latrice Slace: (9) Maria Teixera: (10). Jaquette Walker: (11). Jeanette Torrez.

Again, the Investigator is requested to request Discovery of Respondents. Print-outs of Rout One's clients accounts , as they were constituted on January 29, 2001-March 4, 2001. With attached print-out, of Clients entire payment history, for Investigator's review.

Such Discovery, as that requested Supra. Will Substantiate Petitioners claim of race related discharge, as well, that Route One history, is one with a difficult past. In addition,

(10)

such a discovery would go a long way in dispelling Respondents claim of poor performance based termination.

Further, the Discovery Petitioner is requested Supra. Will show Petitioner was obstructed on February 23, 2001 date.(Petitioner was Fired/Suspended) when Respondent Bill Costa, had Ordered Route One to close at 4% or Petitioner was suspended. A very reachable close for that date.

The evidence will support; On February 23, 2001. Petitioner made several calls to current Due Clients, to let clients know that they were due that day. In addition, calls to Route Ones clients from 1-7 days past due. That Petitioner, without substantial commitments from Route One 1-7 clients, Petitioner took a RAC. Truck to do a collection run. That Co-workers, Eric Costello and Sammy, from Route Two, assisted Petitioner in doing the Collection run.(Collection runs are done to collect past due accounts, or first time defaults, and or the return of property. All of which would effect Petitioner closing numbers)

First house Petitioner stop at, was the home of Juana Frias; the return of this Account, Petitioner knew would stop Mr. Costa's, telephone calls, and possibly, stop Bill Costa's baseless threats.

Petitioner, made contact with Mr. Frias, (whom doesn't speak English, Spanish only) Mr. Costello & Sammy, informed Mr. Frias, that he hadn't paid his Bill at JP. RAC. That he had to pay then or return the Merchandise. N.9/

N.9/ Mr. Juana Frias' payment history is in support of my claim of Race base dismissal. And tends to support my claim, that there wasn't a Company Standard enforce on Route. Any RAC Manager would had terminated Mr. Frias as a Client. Scott Rabb, of Roslindale would not tolerated Mr. Frias' lateness. Support by the "Goble plan" It required Mr. Juana Frias' termination.(Exhibit-D)

-11-

Mr Frias stated he would come to the Store. Mr. Frias, arrived at the JP. RAC. With the Petitioner following him, immediately Mr. Frias began complaining that the Petitioner had been stalking him. Further, stating to my then Manager Kevin Bell, via a interpreter, that he didn't owe RAC, any money; that in fact he paid in cash, for all items purchased from RAC. N10/. (At the Time Mr. Frias had a Bedroom set, Living Room Set, Computer, Big Screen Television and Washer&Dyer.(This is Six cards, and substantially effected my numbers) Mr. Costa, was immediately informed of Mr. Frias' claim, that he paid cash for the Merchandise, he now held.   Petitioner was not concerned about this account, as it was collected. N.11/ Petitioners focus was on getting Olando Marcebo and Ivan Hiram, accounts solved. Both individuals at least five cards a piece.  But before Petitioner could leave to resolve those accounts, Mr. Costa, requested to speak to Petitioner, stating "I hope this isn't another scandal at that store." " I really hope this isn't." Petitioner answered Mr. Costa by saying. "you wanted this account right, then I'll get it Right, Mr. Marcebo, is finally getting pick-up. Mr. Hiram, is also getting pick-up."

---

N.10/. Petitioner states, Mr. Frias, was allowed to offend every Company Standard found in the Dana Goble plain, partial payments: Waiver of Late fee's that exceeded $250. ect.

---

N.11/ In early February 2001. Bill Costa, Regional Manager Roger Iverson, came to the JP. RAC, after three bad months in sale and collections; Several Management staff were caught submitting fake Rental Agreements. Several Management Staff were caught returning Merchandise that had generated no income. And several clients, such as Mr. Juana Frias, claimed to had paid cash for items, the JP. RAC. Were requesting payment on. Although finger prints led to offenders, and threats of firing was heard, no disciplinary action was taken by Bill Costa.

-12-

And Petitioner named about Ten additional clients whom according to "Goble Plan" must be terminated as clients. Mr. Costa, states, he wanted to look, at those Accounts, Petitioner was running.  Petitioner was locked out of the Computer System, of those clients accounts, which indicated to Petitioner, that Mr. Costa, had accessed data.  At all time Petitioner was in Telephone Contact with Mr. Costa.  Mr. Costa, stated "Don't worry about your back end, get control of your 1-7, now put Kevin(Kevin Bell)back on the phone." But Petitioner refused, stating Petitioners position, that there was no way, that at that late Hour, my 1-7 Clients were going to help Petitioner close at 4%.  That Petitioner, must collect from those Clients submitted. Mr. Costa didn't want to discuss it (Collection) and told Petitioner to get back on the Telephones.

The action of denying Petitioner, the ability to collect those clients supra, by Bill Costa, is/was obstruction.  As Petitioner had a reputation, for success, in collection runs. So much so, that Petitioner was constantly assigned to collection runs done by JP. RAC. Constable Dave Johnson. Petitioner is/was preferred driver and staff person, because of the Petitioners success.N.12/

---

N.12/ The fact is, that during the entire first week that Kevin Bell, my New Manager at JP.RAC. was assigned to that Store, Petitioner was the lead driver in transportation due to injuries to Transportation Staff. I collected a First Time Default Client, that had changed locations, without informing RAC. On Hooker Street in Brighton(Techwood Stereo) Did collections with Sammy, of a client, also whom lived in Brighton, whom also had a bad payment history. Petitioner delivered Two Big screen Televisions, collected from the Dorchester and Revere RAC. To our customers, well after the store had closed.

-13-

Additionally, Petitioners termination cannot be justified, by the claim of poor performance. It fails, when you look at the History of Route One, and it prior Managers of Route One. Donny Cruz, Doug Angle and Kevin, all have failed to close that Route consistently week end, week out. But none had been fired or suspended, because of it. And there is a reason for it. A lot of Clients on Route One are Management friends, which results in interference by management, and the abandoning of the "Goble Plan" in dealing with these Clients. This evidence is found in the Payment history of those Route One Clients.

Petitioner states, the Payment history of just the few Clients Petitioner has submitted supra, is sufficient evidence to warrant the Investigator request for further discovery. As the Petitioner is unable to provide the Agency with additional name, as most additional client can be identified by the Petitioner, by location of Client residents.

Finally, through the Payment History of Route One Clients, Petitioner will vindicated, of the Respondents charges of poor performance, and failing to meet Company Standards, while Petitioner managed Route One. By establishing there was no Company Standards enforce on Route One.

### (3). <u>That Rent-A-Center Had Terminated Petitioner In Retaliation For Petitioners Observance Of Martin Luther King Holiday</u>

Again, the Petitioner incorporated all facts sworn Supra. In sections 1 and 2. As all inference alleged.

Petitioner states, without truly understanding Bill Costa's Management style, is not to understand Bill Costa. Mr. Costa's Management style, is a in your face attitude. Mr. Costa,

-14-

        is a skilled Motivator. So in being a Employee of RAC, in Mr. Costa's Market. You have to be thick skinned to deal with Mr. Costa. Petitioner really isn't a thick skinned guy. And Petitioner is Self-Motivated. As well Petitioner believes, he can defend himself, in verbal confrontation, with the likes of other Self-Motivated None thick skinned individuals. Its just that Mr. Costa, can be a bit much at times, with the constant threats of firing, individuals whom don't perform under Mr. Costa, day to day Standards, or whom don't respond favorably to his endless verbally attacks. And those of whom object, to a particular threat of firing; or of their perceived arbitrary standards applied on them on a giving day, will be placed on Mr. Costa's, list of harassment.

        Mr. Costa, has made a reputation for himself, within that Market of RAC, that he manages, for the needless verbal attacks and the summarily termination of Staff. N.13/

---

N.13/ Petitioner, Keith Bodden, Eric Costello, Doug Angle, Robert De-Larosa, Sammy and maybe Scott Balm, were called from Our Offices at the JP. RAC. by Bill Costa.(Mel Perdomo was also there with Bill Costa, when the Petitioner was summons, and witness these events) Mr. Costa, called the Roslindale RAC. via speaker phone. The Roslindale Manager named Al, answered the telephone, Bill Costa, immediately stated " You piece of shit. You piece of shit, make me understand why I still employ you. You must be fuckin exhausted, you made One fuckin sale today. You must be fuckin exhausted." Al the manager at Roslindale attempted to answer, but Mr. Costa, continued his verbal attack, stating again: "Make me understand why I am paying you $33.000. a year, and I got this rookie, Eric Costello, whom I am paying $23.000 who had 6 sales today. Make me understand how come I am still employing you." It was a totally embarrassing event to listen to. But It's Classic Bill Costa.

-15-

I've witness Mr. Costa, berating my Manager Mel Perdomo, on to many occasions. As well my Assistant Manager Scott Balm. Petitioner has, additionally been made to witness unfair attacks on collection Staff as well Transportation personnel. N. 14/

No one has been excluded from Bill Costa's threats of termination.

It is in this type of light Petitioner found himself in, when on January 15, 2001. Without the Permission of Bill Costa, Petitioner took off work, in observance of Martin Luther King day. This January date, was the begin of my One a day, threatening Telephone calls from Mr. Costa. It's also the date that Mr. Costa, discovered that the Petitioner wasn't Spanish. All of which are significant, as these incidents, along with A Policewoman named Karen Green, whom Petitioner made the mistake of calling, without managements approval, a collection call demanded in the alleged Company Standards for collection

---

N.14/ Mr. Costa, went after Donny Cruz, in late January early February 2001. When a Client of JP. RAC. came into the store, claiming that Merchandise ordered from the store, hadn't been delivered at its scheduled time. Mr. Costa told Mr. Cruz, to take the Merchandise and deliver them now. Mr. Cruz, stated " I need a Copy of the Rental Agreement: A Delivery Checklist, Waiver Form and a Call Back Sheet." Bill Costa, stated. "What are you?" Mr. Cruz stated "a account manager" Mr. Costa stated "What am I?" Mr. Cruz stated "A Market Manager" Bill Costa stated "What part didn't you understand?" Mr. Cruz stated, " The part where I don't have paper work." Mr. Costa stated finally, in true Bill Costa fashion. "You want to continue to be employed here you better get that Merchandise on that truck." Mr. Cruz stated again "Not without proper papers." At which point several employees took Mr. Cruz out the back door, away from Mr. Costa.

-16-

N.15/ All of which led to the Respondents biasness.

In any event, Petitioner informed JP. RAC. Management Mel Perdomo, Manager; Assistant Manager Keith Bodden; IO's Doug Angle and Eric Costello, that the Petitioner would not be in to work on Martin Luther King Day. Given Management at least two weeks notice, that Petitioner wouldn't be available. But it appears, these several individual forgot when Mr. Costa, called the store on January 15, 2001. And found-out, that Petitioner hadn't arrived at work.

My Assistant Manager Mr. Bodden, called Petitioners home, leaving a message with Petitioners Wife, stating to have Petitioner call the Store, that they (Management) wanted a explanation for why the Petitioner hadn't shown up for work. Petitioner called the JP. RAC. later that January 15th date, speaking with the Manager Mel Perdomo. Petitioner was questioned by the Manager, about not reporting to work. Again the Petitioner informed him, of his request for that day off, several weeks ago. Petitioner was informed that Bill Costa, called the store, and wasn't happy, when he found out, that Petitioner hadn't reported

---

N.15/ Karen Green, is a Boston Policewoman, whom began Renting Merchandise from the Dorchester RAC. She was transferred from Dorchester to JP. RAC. having rented a Television. Mr. Green, at some point purchased the Television, and ended her dealing with RAC. But someone continued her Account, by renting several additional articles, and at the time Petitioner had Called her, She was in Route One System as having a Computer, which she was late in paying on. Petitioner sought payment. It turns out, Mr. Green, never authorized anyone, to use her past account at RAC. Nor was she renting a Computer, from RAC. As well someone was paying on Merchandise, using information provided by her to RAC. She was concern and threaten, legal action against RAC for allowing that to occur.

-17-

Stating , that he (Mr. Costa) thought Petitioner was a "Goya"  Which Petitioner was told by Manager Mel Perdomo, that Goya meant Spanish.

So on Tuesday January 16, 2001. Petitioner reports to work, as scheduled, and at sometime Petitioner answer the Telephone "Good Morning, thank you for choosing Rent-A-Center, Marvin Speaking, how may I help you?" And Mr. Costa, immediately responds "By making me understand how come I Still employ you.' "Everyone was at work on Monday except you' "Did you do something I don't know about, not to be there on Monday?" Petitioner explained, that Petitioner observed Martin Luther King day, in addition that Petitioner made Management aware, well in advance of that January date, that Petitioner wasn't going to be available, and the Petitioner was assured there wouldn't be a problem, as the Petitioner, had put in Petitioner fair share of Overtime Hours. Mr. Costa demanded I answer the question of why he still employs me.  This went like that, for several seconds, Mr. Costa, questioning Petitioners understanding of Collections, then he finally hangs up.

Again, every collection manager gets these types of calls, almost daily from Mr. Costa, but Petitioner's calls started as result of Petitioner observance of Martin Luther King day, and Mr. Costa's, questioning of Petitioner Race. Finding out that the Petitioner was a Domincan, as many of the Petitioners Co-workers had mistaken Petitioner for.  And the calls continued to be very personal.

In early February 2001. Petitioner receives a call from Mr. Costa, exactly like that described Supr. Petitioner hadn't closed Petitioners Route on Monday, and Tuesdays closed was within sight, but not made, when Mr. Costa, call, stating "Why don't you quit now?" "Why wait for me to fire you?" "You don't want to work there." Petitioner responded to all Mr. Costa's, why's.

-18-

Explaining, to him, that Petitioner just assigned to the Route. That Petitioner needed an opportunity to succeed; That Petitioner would make both close and opening(Which Petitioner did)also explaining to Mr. Costa, it was rather hard to make both Petitioners opening and closes, while making delivery and services for the last week. Explaining further, that my Manager (Mel Perdomo) was out injured. Transportation had suffered three injuries, with Donny Cruz out; Jose was out as well David, and that Petitioner, was returned to the Truck, by Assistant Managers Keith Bodden, and Doug Angle. In addition it was going to take time to break the Route One client of those bad habits. Mr. Costa, became offended, telling Petitioner he had ran the Brockton RAC. and that the Brockton RAC, isn't some backwoods operation. And that he succeeded, and counseling client took Ten Hours, per-week. Petitioner again agreed, but Petitioner needed a chance to establish himself with the clients from Route One, and cut some the interferences, without which, Petitioner couldn't manager the Route. And finally, explaining to Mr. Costa, it was helping Route One, by the Petitioners going back and forth from transportation to Route One. I was told to put the phone down and go home. Petitioner did. Relaying the conversation to both Assistant Manager and IO Eric Costello, and went home.N.16/

---

N.16/ This event was totally misrepresented by Respondents in their Position Statement Exhibit-C Page Three Paragraph 2. In addition, Petitioner never felt Petitioner job had been terminated. Petitioner was sent home for the day. Petitioner has never been sent home in the past, but Petitioner has witness such actions taken against Staff at the JP. RAC. by the Manager Mel Perdomo and Assistant Manager Keith Bodden. So it's also a fact, Petitioners wife, had never called JP. RAC, asking for Petitioner Job back.

-19-

The following morning, after being sent home, by Mr. Costa, Petitioner called the Office of Mr. Costa, Petitioner was told to report to Petitioners manager the following day. Which, the Petitioner did.

Petitioner states, Petitioner became a target for Bill Costa, threats, only after the Martin Luther King Day issue. Because prior, Petitioner had several conversations with Mr. Costa, and they were about the fake accounts.N.17/ The large number of returns on a given day.N.18/ But the "why don't you quit?" "You don't want to work there, just quit now." Stuff only occurred after the Martin Luther King day issue, and Mr. Costa's discovery, that the Petitioner wasn't Spanish.

## (4). <u>Respondents Position Statement</u>

Responding to Respondents Position Statement, is not hard. Basically the pleading is barren; It's founded on the principle that Petitioner was "Deceitful" for failing to describe in detail a First Degree Murder Conviction Petitioner received. And It's this theme throughout. That Petitioner failed to admit.

---

N.17/ Mr. Costa, and the Boston Policewoman Karen Green Issue.

---

N.18/ Mr. Costa, threaten to fire, anyone not able to produce Merchandise that was returned to the systems, after a day when Fifteen returns to the system were made, after a Saturday sale that just allowed the JP. RAC, to close on the plus. Petitioner had Three returns A dryer(Latrice Slade) A Television from a client from Metcalf Court. And a Techwood system First payment default, Skip, Hooker Street in Brighton, Mass. Again, despite evidence of culprits, no one was suspend of fired.

-20-

Well Petitioner did admit, that for Six Months when allegedly Spanish guys were "...performing well in their respective position..."(See Exhibit-C at page three paragraph 5) the Petitioner was "performing well in his respective position." In transportation, doing delivers and service for the JP. RAC. It was Petitioner who was responsible for making 25 Deliveries a week. And services of that same number. But not considered for promotion. For the Respondents to infer, that the Petitioner did not perform excellent, in transportation for those six months, is a joke. It could be alleged, that maybe the Petitioner wasn't familiar with the RAC system, and Petitioner would argue against such a position. Petitioner, is more than likely, the only person whom completed the Renter Choice Manual, with the exception of Keith Bodden, who has been promoted, during my period complaint As well, Petitioner has done all the duties of a IO.

Petitioner further admits, Route One Collections was difficult, based on several factors. And on a couple occasion, Petitioner was unable to close that Route.   But the Respondents have refused to admit, that the condition of that Route, was difficult at best; denying the Petitioner the opportunity to enforce the Goble Plan, with regards to that Route; the opportunity to terminate those clients, whom continue, to break agreements, or otherwise live up to their agreement with Petitioner, and RAC Managements interference, with counseling clients, by encouraging clients to not meet their agreements to pay on time, by waiving late fee's, given week extension, to those routinely tardy clients. Rewarding these tardy clients, with additional Merchandise, for rent in face of troubling payment histories and the refusal to support this Petitioners decision to cancel, agreements with clients not willing to pay on time.

-21-

It's this, as factors, that prevented Petitioner, Doug Angle, Donny Cruz and Kevin from success on Route One.

Again, Petitioner was the only person suspended or fired, of the Four Supra. Whom, managed Route One.

As for the allegation, that Petitioner, demonstrated a bad attitude, or anti-social behavior. Petitioner relies on the Statements of my Co-workers, my Manager(s) and Assistant Managers to dispel that non-sense. Not the foolishness of this Texas Bean Counter, or the pettiness of Bill Costa. Petitioner demonstrated a very good attitude, got along well with all my Managers (Never got the opportunity to work with Kevin Bell, as Petitioner stated, during Kevin Bell's entire time at RAC. Petitioner was in Transportation arrived at 10:00AM. 12:00PM Leaving in the truck at 11:00AM, 1:00 PM returning at 9:00PM. His entire time there) Petitioner always carry his share of the work at RAC. and was known to carry others, without conflict, Petitioner, again states, Petitioner relies on his Co-worker opinion, on this issue.

Respondents have failed to admit Petitioner termination was based on race; Petitioners charges that Petitioners failure to receive a promotion was based on race. In addition offered the Investigator, a place to find, the contradictions of the Respondents charges that the Petitioner had failed to meet company standards. In face of this the Respondents countered by offering easily proven lies. Such as Keith Bodden, being a African American. Knowing completely that on his Application he's listed as a Spanish person, and on his Birth Certificate states Hunduras.

Equally as pathetic, is knowing that Doug Angle, is around, with his treatment by Bill Costa, was text book Racist.

-22-

It is in this spirit, that Petitioner brought this action. Petitioner, gave RAC. a commitment, that Petitioner lived up to. RAC reneged on it's commitment to Petitioner. Petitioner treatment by RAC wasn't warranted or deserved. There is much evidence to support the Petitioners complaint.

Finally, Petitioner swears, Petitioner never lied on Petitioners Job Application. Petitioner admitted, Petitioner had been convicted of a Felony. Listing that felony. The court that it could be found at and sentence. In addition, Petitioner signed a C.O.R.I. release given RAC access to my Criminal Information. Petitioner, Applied at RAC because Petitioner was told a Criminal background check, wouldn't exclude Petitioners application. But facts are facts. Petitioner has never been suspected of First Degree Murder, Nor has the Petitioner ever been Arrested or charge for such a charge.

Again, my complaint, is a legitimate complaint of discrimination, and not a vehicle to extract some sort of nuisance settlement from RAC.

Dated: June 4, 2001

Submitted By

Marvin M. Smith
28 Irma Street
Boston, Massachusetts 02124

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK COUNTY                    MASSACHUSETTS COMMISSION
                                 AGAINST DISCRIMINATION
                                 NO. 01130691 _____

---

Marvin M. Smith,
Complainant.                                    *

Vs.                                             *

Rent-A-Center, Inc.                             *

Roger Iverson, Regional Manager                 *
Rent-A-Center, Inc.
                                                *
William Costa, Market Manager
Rent-A-Center, Inc.                             *

Kevin Bell, Manager                             *
Of The Jamaica Plain Rent-A-
Center, Inc.                                    *

Respondents.                                    *

---

## COMPLAINANT'S MOTION REQUESTING PERMISSION
## TO AMEND COMPLAINT


        Now comes the Complainant Marvin M. Smith,  and
hereby moves the Commission pursuant to Mass. Gen. Laws. Ch.
151B, §§ 5, 9. and request permission to Amend Complaint.
Carter v. Commissioner of Correction, 43 Mass. App. Ct. 212,
218-220(1997).


                                 Submitted By
Dated: May 23,2003.

                                 Marvin M. Smith
                                 28 Irma Street
                                 Dorcester, Mass 02124

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK COUNTY

MASSACHUSETTS COMMISSION
AGAINST DISCRIMINATION
NO. __01130691_____

---

Marvin M. Smith,                          *
Complainant.
                                          *
Vs.
                                          *
Rent-A-Center, Inc.
                                          *
Roger Iverson, Regional Manager
Rent-A-Center, Inc.                       *

William Costa, Market Manager             *
Rent-A-Center, Inc. Boston Central.
                                          *
Kevin Bell, Manager
Jamaica Plain Rent-A-Center, Inc.         *

Respondents.                              *



---

## COMPLAINANTS AMENDED COMPLAINT

Complainant hereby realleges and incorporates by reference as if fully set forth in original complaint those allegations of Discrimination on behalf of Rent-A-Center, Inc. , Respondents Roger Iverson, William Costa and Kevin Bell, and now Amends that original complaint to include this cause of action which is further pled against Rent-A-Center, Inc. Iverson, Costa and Bell and each and every Respondent.

Subject of a Oral or written reprimand, for violation of any RAC guideline or procedure or policy, until the date of February 2001, which resulted in Complainants suspension and termination.

Complainant after Five Months of employment at RAC, Complainant was bye past for promotion by Respondents, in favor of the promotion of later hired and less qualified Hispanic Employees.

Complainant on or about December 2000 brought the matters of promotion to then Manager Mel Perdomo, with the Complainant requesting promotion.   Then Manager Mel Perdomo, informed the Complainant that all promotion were done by the Respondent Costa, further, that he Manager had spoken with Respondent Costa, and that Complainant would be next for promotion.

Complainant was never promoted. But on March 2001 Complainant was terminated from employment.

Complainant on or about December 2000, was given the Assignment of Account Manager for JP RAC Route One, replacing Account Manager Donny Cruz.

As Account Manager, assigned to Route One, Complainant was responsible for the Administration of Route One Customers Accounts. The Weekly Renewal of Contratual Rental Agreements.  As well the processing of Customers request for Product Delivery and Services. To answer Customers concerns regarding Sales and Rentals. And to generated New Accounts.

The Route One Account at JP RAC had a History of being poorly Manage. With the Route being full with RAC Employees Family and Friends Accounts. A condition that made managing Route One near impossible.

In addition there are also Customer Accounts, on Route One, that are the direct responsibility of Respondent Costa. Which required the Complainant to seek Respondents permission to contact or Manage in accordance with RAC Policy.

-3-

As well, there are were a large number of Customers Account on the Route One that prior Managers and Respondents, allowed repeatedly to violate the RAC Management policies. In regards to on time renewals of Contractual Agreements, the imposition of late/reinstatement fees assessments.  Added to this group of customers were the large number of Law Enforcement Officers Accounts, that on average were allowed to renew their contractual agreements at will.

Managers on the Route One Accounts were constantly undermind by the Respondents in their Management of Route One, by the denial of the use of late/reinstatement fees assessments as inssurance of on time renewals.

On or about December 2000. The JP RAC began to succumb to bad Administrative practices.  JP RAC received in the Month of December 2000, a reprimand from the Respondents Costa and Iverson, for the filing of false Rental Agreements and Sales reports during that December 2000.  As well, no RAC Employee was suspended or terminated from employment as a result of the reprimand.

Complainant states, January-February 2001 was no better for the Administration of JP RAC, with the loss of JP RAC Manager Mel Perdomo, due to injury as well the Customer Service Staff, responsible for the Delivery, Service and Collection of Customer Merchandise.

Specifically, with the loss of JP RAC Manager in January 2001. In fighting develope between Hispanic Inside/ Outside Manager and Caucasian Assistant Manager to succeed Manager Mel Perdomo. In fighting that splitted the JP RAC along racial lines.  Added to this drama was the Respondents Costa and Iverson's decision to promote the Inside/Outside Manager over the then Assistant Manager, and to then make both men "Co-Managers" of the JP RAC, in face of being confronted on the issue by then Assistant Manager, whom claim the promotion was unfair.

-4-

Among the further turnmoil at the JP RAC, was the
loss of exprience Customer Customer Service Employees.
Ccomplainant being the only exprience Customer Service
Employee not a Inside/Outside Manager, was reassigned the
additional assignement of Customer Service.

Complainant states, that during the Months of
January-February 2001, Complainant spent on average(9) hours
a day performing the assignment of Customer Service.   The
Complainants responsibilities to route-one was reduced to
calling weekly fall out Customers. (Fall out Customer calls
were to customer close to falling into default) the rest of
the responsibility for route-one was the assignment of
Inside/Outside Managers at JP RAC, via RAC policy.

It was during the Month of January-February 2001,
that the Complainant began to receive disturbing telephone
calls from the Respondent Costa, concerning some of Route9One
accounts.   Specifically a Boston Policewoman, whom claimed
not to be a Customer of JP RAC; whom received a telephone call
from the Complainant about the renewal of contractual agreement
with RAC. Further, the Boston Policewomens concern about
identity theft.

Additionally, harassment calls from the Respondent
Costa, continued in earnest throughout February 2001, after
the Complainant took off the JP RAC Management approved Martin
Luther King Jr. Holiday.   Conversation between the Complainant
and Respondent Costa, continued to be about the Management of
Route One and JP RAC in general.

Also in February 2001 Respondents Costa and Iverson,
appeared at the JP RAC. Respondent Kevin Bell was introduced as
JP RAC Manager.   Complainants continued in his assignement as
Customer Service Employee.

On the date of February 23, 2001, Complainant was

-5-

summons to the Respondent Kevin Bell's office and
advised that the Respondent Costa, requested to speak with
the Complainant.    Respondent Costa via telephone advised
the Complainant of the statical position of the Route One
Account.    In addition, advised the Complainant of the
companies required position of the Route One, for that date
of Friday March 23, 2001.    Complainant was further advised
by Respondent Costa, that if Route One wasn't at company
required close by the end of the work day, that Complainant
would be written up and suspended for a week.

Complainant continued Complainants work assign-
ment, after the conversation with Respondent Costa, by
phyically collecting debt, on several very abusive Route
One Customer Accounts. Bringing those collected account to
the Respondents Costa and Bell for settlement.    Several of
the Route One collected accounts, on the date of February
23, 2001, had claimed to the Respondents Costa and Bell, to
had pay in full, to the prior Manager, the cost of all items
listed as default in Route One JP RAC files. Other Route One
collected account on February 23, 2001, had claimed either
their Merchandise list as default in JP RAC files had been
stolen or was before the Judicial branch of government. All
of which had caused Administrative problems in dismissing
the Complainant for failure to close Route One.

Complainant on February 23, 2001 had position him-
self for the physical collection of additional abusive
Route One Customers accounts, which would had allowed for the
Complainant to close route One, despite the already collected
merchandise mentioned supra.    But it was after the collection
of the merchandise supra., that Respondent Costa ordered the
Complainant to end the physical collection of JP RAC Customers
Accounts, and process the Route One through Tele-Marketing
methods.    As less successful, and productive method of meet-
ing Route One Close, due to the late hour.

-6-

At the conclusion of February 23, 2001 JP RAC work day, and with the Route One Account close in dispute, due to the Respondent Costa and Bell's refusal to apply the phyical collection accounts to the statical close of Route One numbers. The Respondent Bell wrote the report ordered written by the Respondent Costa on the Complainant, and advised the Complainant that the Complainant was suspended for one week.

On the date of March 1, 2001 Complainant was termination from employment at JP RAC.

CLAIMS:

1.          Complainant has been discriminated against by Respondents Rent-A-Center, Inc., Roger Iverson, William Costa and Kevin Bell and each of them on the basis of race in violation of Mass. Gen. Laws. Ch. 151B, § 4 by Respondents engaging in a course of conduct which included subjecting Complainant to disparate treatment in employment because of Complainant African American Race.

2.          Complainant has been discriminated against by Respondents Rent-A-Center, Inc., Roger Iverson, William Costa and Kevin Bell and each of them on the basis of race in violation of Mass. Gen. Laws. Ch. 151B, § 4 by Respondents engaging in a course of conduct which included subjecting Complainant to deprivation of job responsibility in employment because of Complainants African American Race.

3.          Complainant has been discriminated against by Respondents Rent-A-Center, Inc., Roger Iverson, William Costa and Kevin Bell and each of them on the basis of race in violation of Mass. Gen. Laws. Ch. 151B, § 4 by Respondents engaging in a course of conduct which included subjecting Complainant to lack of pay increase in employment because of Complainants African American Race.

-7-