with Mr. Smith assigned to c __tomer service. Later in December 20(__ __)e received an additional assignment of collection manager.

8. At no time during my management at Rent-A-Center, had Mr. Smith's job performance or attitude been an issue of dispute between the managers of Rent-A-Center.

9. On or about the date of December 2000 Mr. Smith, was assigned to route one as a collection manager, replacing Rent-A-Center employee Donny Cruz. Whom had some difficulties managing said route.

10. During my assignment at Rent-A-Center in Jamaica Plain, I was the collection Manager for route two ( October 200 December 2000) and had always known route one to be a problem route for the Rent-A-Center unit.

11. With Mr. Smith' assignment to route one, Rent-A-Center at Jamaica Plain, he came to uncover the loss of merchandise/inventory. The discovery of phantom client accounts and the loss through injuries of key personnel. Employee's began to panic, thus using poor judgment in their decision making, and certain failure in meeting their goals.

12. As a direct result of injuries to staff, Mr. Smith was re-assigned to customer service, during most of February 2001. As he was the most experienced customer service employee at the Jamaica Plain unit at that time.

13. In mid January 2001, William Costa, Market Manager for Rent-A-Center, became very involved in the day to day decision making at the Jamaica Plain unit.

14. Mr. Costa, whom is responsible for all personnel decision making at Rent-A-Center Jamaica Plain normally appears at the unit five(5) times a month. Mr. Costa was at the unit daily through February 2001 for a week.

15. Mr. Costa, knew at all times relevant the poor performance history of route one.

16. I have no personal knowledge of a Rent-A-Center policy, that supports the notion that having a staff that closely resembles te statistical racial makeup of the community is a Rent-A-Center preference.

17. I am personally aware that Mr. Costa had transferred several African American employees away from the Jamaica Plain Rent-A-Center, to locations in both Hyde Park, and Roslindale, between the months of March 2000- October 2000 and replaced each of those transferred employees with Hispanic's.

18. I additionally, know that Rent-A-Center then store manager Mel Perdomo, whom is a Italian American, was fluent in Spanish, the assistant manger Scott Balm, a Anglo also spoke Spanish, were very helpful in the day to day operation of the Jamaica Plain Rent-A-Center. As it's customer base was the Hispanic neighborhoods of Jamaica Plain and Boston. And very often it was necessary for the managers to speak directly to clients to resolve disputes.

19. Additionally, my personal knowledge of Mr. Smith's failure to appear at work on the

Martin Luther King Jr., holida, was that I was told by Rent-A-Center. ager Mel Perdomo, to call Mr. Smith and get him into the store. That he just got off the phone with William Costa, and Mr. Costa was not happy to find out Mr. Smith was not at work. I called Mr. Smith's home leaving a message with his wife for Mr. Smith to call the store. I do not know what was further done between Mr. Smith and Mr. Costa.

20. The question of whether Mr. Smith was treated differently than Hispanic employee's at Rent-A-Center Jamaica Plain unit? The answer is obvious, yes. As neither Eric Costello, or Donny Cruz were fired for both filing false rental agreements and failing to meet company standards in both sales and collections.

21. As to the question, was Mr. Smith terminated based on race? I have no personal knowledge to say he was or was not. I believe that Mr. Smith's termination was the result of the poor condition of Rent-A-Center Jamaica Plain unit over all. As the now manager Kevin Bell had come over from the Rent-A-Center unit in East Boston, ( a decision that management thought would see improvement) the Jamaica Plain unit continued to lag behind projected earning. Mr. Costa, sent a message to the rest of the employee by terminating Mr. Smith, who's route was not/ had not been meeting projection.

22. Was Mr. Smith's attitude a problem at Rent-A-Center? Answer is never. Mr. Smith was first to work, last to leave. Again, up and until the day Mr. Smith was terminated Mr. Smith was performing customer service request in some of the most difficult communities in Boston. Well after closing time of that unit. Mr. Smith's job performance nor attitude was the basis for termination.

I Keith Bodden, sign the foregoing affidavit, under the pains and penalties of perjury this 21st day of January 2002.

_____

Keith Bodden

Commonwealth of Massachusetts Suffolk County

Massachusetts Commission
Against Discrimination
No: 01-13-0691

Marvin M. Smith
    Complainant.

Vs.

Rent-A-Center, Inc Et Al.
    Respondents.



### Notice of Appeal

    Now comes the complainant Marvin M. Smith, and hereby requests that commission take notice of appeal of order dismissal pursuant to 804 CMR 1.13 (1) (A) (1) & (2).

    Dated Aug 29, 2003

    Submitted by,

Marvin M.. Smith
2251A Washington St.
Newton, MA 02462

September 19, 2003

Marvin M. Smith                                          EX-N
   Washington Street
Newton, MA 02462

      RE:  Marvin M. Smith v. Rent-A-Center, Inc.
          MCAD Docket No 01130691

Dear Parties:

You are hereby notified the Commission has received your appeal in the above referenced matter.  A preliminary hearing has been scheduled for October 8, 2003 at 1:00 p.m., in the Boston Office.

Please bring any additional information you wish to present to the Commission in support of your appeal.

If Complainant is unable to attend, a written appeal may be submitted. If the Respondent is unable to attend, no continuance will be granted.

                  Very truly yours,

                  Nancy M. To
                  Appeals Process Coordinator

cc: Robert F. Friedman
    Winstead
    5400 Renaissance Tower
    1201 Elm Street
    Dallas, TX 775270

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK COUNTY                          MASSACHUSETTS COMMISSION
                                        AGAINST DISCRIMINATION
                                        NO. 01-13-0691


Marvin M. Smith,                )
        Complainant.                        EX-O
                                )
V.                              )
                                )
Rent-A-Center, Inc., et al.     )
        Respondents.            )

              COMPLAINANT'S MOTION FOR RECONSIDERATION
                OF JULY 29, 2003 FINDINGS/DECISION
                DISMISSING COMPLAINANT'S COMPLAINT
                   FOR LACK OF PROBABLE CAUSE


        Now comes the Complainant Marvin M. Smith, and
moves the Commission pursuant to 804 C.M.R. § 1.15(7)(c);
408 C.M.R. § 1.15 (7)(d), in Complainant's Motion For
Reconsideration Of July 29, 2003 Findings/Decision
Dismissing Complainant's Complaint For Lack Of Probable
Cause.

        In Support of this motion please find the
Complainant's Memorandum Of Law In Support Of Complainants
Motion of Appeal.



Dated: Septemeber 26,2003                 Submitted By

                                          Marvin M. Smith
                                          2251A Washington Street
                                          Newton, Massachusetts 02462

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK COUNTY                          MASSACHUSETTS COMMISSION
                                       AGAINST DISCRIMINATION
                                       NO. 01-13-0691

Marvin M. Smith,                    )
      Complainant.

                                    )

V.                                  )              EX-P

Rent-A-Center, Inc., et al.         )
      Respondents.

### COMPLAINANT'S MEMORANDUM OF LAW IN SUPPORT OF COMPLAINANT'S MOTION OF APPEAL

          This is a request for relief from the July 29,
2003, findings of lack of probable cause.

          Complainant request for relief are based on:
(1). Findings are unsupported by substantial evidence.
(2). Findings are in conflict with Constitutional
provisions. (3). Findings are base upon abuse of decret-
ion and not in accordance with law.


I. THE PROCEDURAL HISTORY:


          On the date of March 14, 2001. Complainant
filed with the Massachusetts Commission Against Discrim-
ination(Hereinafter MCAD) A Discrimination Complaint
charging that the Complainant had been terminated from
at Rent-A-Center, Inc.(Hereinafter RAC) based on race
in violation of M.G.L.Ch. 151B, § 4(1). In addition, that
the Complainant had been terminated based on the Complain-
ants observance of the Martin Luther King, Jr., Holiday.

-2-

In accordance with 804 CMR § 1.10(7)(b) MCAD
requested that the Respondents answer the Complainants
charges.

On the date of May 3, 2001. Respondents filed
their Position Statement.(Exhibit-C)

On the date of June 4, 2001. Complainant filed
a rebuttal to the Respondents Position Statement.(Exhibit-
D)

Complainant additionally filed, Complainants
First Request for production of documents and Interrogat-
ories.(Exhibits-G,H),N.1/

On the date of July 29, 2003. MCAD dismissed
Complainants MCAD complaint for lack of probable cause.

Complainant states the July 29, 2003 decision
and findings are not supported by credible evidence. And
that under 804 CMR 1.15(7)(a) which states in relevant
part: "...a finding of probable cause shall be made when,
after appropriate investigation, the investigating
Commissioner concludes that there is sufficient evidence
upon which a fact-finder could form a reasonable belief
that it is more probable than not that the Respondent
commited an unlawful practice. In making this determinat-
ion, disputes involving genuine issues of fact to be
reserved for determination at hearing."

## II. JULY 29, 2003 FINDINGS ARE UNSUPPORTED BY SUBSTANTIAL EVIDENCE.

Full Commission of the MCAD is required on
Appeal, to review record which was before hearing

---

N.1/ Complainant was denied all request for Production Of
Documents and Request For Interrogatories.

-3-

Commissioner, and should accept facts found by
hearing Commissioner unless they are unsupported by
Substantial Evidence. <u>Lynn Teachers Union Local 1037</u> v.
<u>MCAD</u>, 406 Mass. 515, 527(1990)

Complainats says the evidence before the
Investigator was the Sworn complainants complaint, and
Rebuttal.(Exhibits-A,D,F) In addition , the Position
Statement of the Respondents.(Exhibit-C) MCAD's findings
are not supported by credible evidence as a matter of
law.

Complaiant has sworn through MCAD Complaint,
that the Complainant was discharged from employment at
RAC Unit 1554 based totally on race.(Exhibit-A,D,F)
Stating that the Complainant was hired at RAC Unit 1554,
as a Acoount Manager. Further, that as a Account Manager,
Complainant duties were to perform the task of Customer
Service, Product Delivery, Product Preparation, Product
Service, Store Appearance and Physical Collections of
Accounts.(Exhibits-A,D,F) Complainant additionally stated
that the Complainant was trained and evaluted on a daily
basis, while performing the task of Rental Selling,
Rental Agreements, Inventory Pricing Receiving and Trans-
fer of Inventory and Account Managing.

Complainant additionally has sworn, that RAC
Unit 1554, perfered to have Hispanic's assigned to that
Unit.(Exhibits-A,D,F)

As well, the Complainant has sworn, that the
Complainant was passed over for promotion by the Respondent

-4-

Costa on three occasions in favor of the
promotion of a newly hired less qualified Hispanic RAC
Employee.(Exhibit-A,D,F)

Complainant has sworn through MCAD Complaint,
that after the Complainant had complained to RAC Unit
1554 Manager, about being passed over for promotion, the
complainant was assigned to RAC Unit 1554 Route One.
(Exhibits-A,D,F) Complainant replacing RAC Unit 1554
Employee Donny Cruz.

Complainant sworn through MCAD Complaint, that
RAC Unit 1554 Route One, was the most difficult route
to control, as the route was full of RAC family members,
and difficult clients.(Exhibits-A,D,F) As a proof, the
Complainant sworn, that the last two RAC Unit 1554 Route
One Collection Managers had been removed, for failing to
control the route, one was transferred back to transport-
ation, the other promoted to Inside/Outside Assistant.
In addition, Complainant had sworn, that the Route One at
Unit 1554 RAC, had a history of being a difficult and
abuse route without a company standard being enforced,
and as a offer of proof, the Complainant submitted a top
eleven, RAC Unit 1554 Route One Clients Names as proof.
(Exhibit-D)

Complainant has also sworn through MCAD
Complaint, that the Respondent Costa, Market Manager for
RAC Unit 1554 and Boston Central M13 Region; Respondent
responsible for hiring and promotions at RAC Unit 1554,
had thought the Complainant was a "Domincan" And that
only after the Complainant had not shown up for schedule
work, did the Respondent become aware, that the Complain-
ant was not Hispanic. (Exhibit-A,D,F) And that after this

-5-

incident of the Respondents discovery, that the Complainant was not Hispanic, resulted in the Complainants termination for the pretextual reasons Infra.

Complainant had sworn through MCAD complaint, that the Complainant for six months, performed the task of that _supra_. at page three paragraph three, with honor and the respect of all fellow employees at RAC Unit 1554, as well that of the Managers.(Exhibits-D,F) And that the Complainant had not ever been the subject of oral or written warnings or reprimand during the Complainants entire six month period, while assigned to those task _Supra_. (Exhibit-D)

Complainant has sworn, that only after the Complainant had taken off the Martin Luther King, Jr., Holiday;(the day the Respondent Costa discoveried that the Complainant was not a Hispanic) did the Complainant begin to get distrubing telephone calls from the Respondent Costa.

Complainant sworn through MCAD complaint to the demeanor of the Respondent Costa, as well submitted evidence of the Respondents reputation for such acts.(Exhibit-D)

Complainant further submitted, incident of the Respondent Costa's transfer of African American Employees of RAC Unit 1554, to replace those Employees with Hispanic Employees.(Exhibit-D)

Complainant has submitted the names of Hispanic Employees(Exhibit-D) whom were caught submitting false rental agreement, to meet the company standards.(Exhibit-D) that did not result in the Hispanic employee being suspended nor terminated.

-6-

Complainant had offered sworn evidence of the
Respondent Costa, promoting Hispanic RAC Unit 1554
Employee Keith Bodden, over alleged White Management
Employee Doug Angle(Exhibit-C,D at 6-7) That resulted in
the White RAC employee quiting.

Respondent offered as there attempt to rebut
the Complainants charges, by "vehemently" denying that
they discriminated against the Complainant, stating that
it was only after repeated oral warnings, poor job
performance and insuborination, Complainants abandoning
of his job, did the Respondents terminated the Complainant.
(Exhibit-C)

Respondents further, attacked the Complainants
character, stating the Complainant is deceitful, whom
is attempting to deceive the MCAD. That the Complainant
has demonstrated anti-social behavior in the past.(Exhibit-
C) Further, that the Complainant had failed to answer
truthfully, the question on the RAC Job Application,
whether the Complainant had ever been convicted of a
felony, omitting the fact, that the Complainant had been
convicted of First Degree Murder.(Exhibit-C)

Further, Respondents answered the Complainants
charges of disparate treatment, by again denying such acts
occur; that the Complainant was being deceptive when
making this charge, as the one White individual they were
able to identify, was assigned to the RAC Route-One
temporarily, as the individual was a Management Employee,
assigned to the route, only to learn the operation of the
store.(Exhibit-D)

As well, to the charge that the Respondents
perfer Hispanic over African Americans, again, the
Respondents deny such allegation, as a offer of proof,

-7-

that the RAC doesn't use racial perference,
none of the Manager at RAC are Hispanic, they are Anglo,
Potuguese and Italian American.(Exhibit-C) Further as
proof that the Complainants allegations are complete
fabrication, Keith Bodder, was a Manager at the RAC
Unit 1554, while the Complainant was assinged there. And
that Mr. Bodder, was promoted during Complainants assign-
ment at RAC Unit 1554.(Exhibit-C) Obtaining higher
Management at that RAC Unit. And Keith Bodder is a African
American.(Exhibit-C)

Respondent state, the real reason the Complain-
ant was terminated from RAC Employment, was poor perform-
ance.(Exhibit-C) And that after several oral warnings
about the Complainant poor performance; the Complainant
storming out of the Store, after being given construtive
criticism by the Respondent Costa; The Complainant being
warned that if the Complainant did not improve, the
Complainant could be suspended and or termination, and
that the Complainant additionally making derogatory
comments about the company and once again abandoning his
job. It after all this, that the Complainant failed to
report for work that the Respondents decided to terminate
Complainant.(Exhibit-C)

Complainant addition state, that the Respondents
did not retaliate against the Complainant for observing
the Martin Luther King, Jr., Holiday. The Complainants
charges are baseless.

Justice Ruth Abrams, whom authored the Blare v.
Huskey Injection Molding System, Boston, Inc. 419 Mass 437
445(1995) stated "... The ultimate issue of discrimination,
raised by the Plaintiff's and Defendant's conflicting
evidence as to the Defendants motive, is not for a court
to decide on the basis of Affidavit, but is for the fact

-8-

finder after weighing the circumstantial
evidence and assessing the credibility of the
witnesses." Complainant ask that the Full Commission
be ever mindful of this supra.

MCAD claims to had found, that the Respondents
had articulated a legitimate, nondiscriminatory reason
for taking action against the Complainant. The evidence
does not reveal that the complainant was subjected to
more stringent demands than other, non-Black employees.
Complainant states, the MCAD finding isn't support by
credible evidence nor substantial evidence.

Where there is no direct evidence of
discrimination, Complainant is ask to follow the three
stage order of proof set forth in Blare v. Huskey, Supra
at 444-445.(Also noting the decision in Abramian v.
President & Fellows of Harvard College, 432 Mass. 107, 112-
113(2000) )In the first stage, the Complainant has the
burden to establish a prima facie case of discrimination
by showing that (1) Complainat is a member of a class
protected.  (2) Complainant performed Complainants Job
at an acceptable level. (3) Complainant was terminated.
(4) Respondents sought to fill the Complainants position
by hiring another individual with qualifications similar
to the Complainants.

In the second stage, the Respondents can rebut
the presumption by articulating a lawful reason or reasons
for its employment decision and producing credible evidence
to show that the reason or reasons advance were the real
reasons.  Respondents need not prove that the reasons were
nondiscriminatory. Matthew v. Ocean Spray Cranberries Inc.

-9-

426 Mass. 122, 128(1997) But the Respondents retain an incentive to persuade the tier of fact that the employment decision was lawful.  Thus the Respondents normally will attempt to prove the factual basis for its explanation.  If Respondents has failed to meet its burden of production at stage two, the presumption created by the evidence supporting a prima facie case entitles the Complainant to judgment.Blare v. Huskey, Supra. at 442

If the Respondent meet its burden of production at stage two the presumption created by prima facie case drops from the case and the proceeding advance to the third stage the Complainant must show that the basis of Respondent decision was unlawful discrimination. Blare v. Huskey, Supra. 442-443, 446. By Complainant showing that the reasons advance by Respondents for making the decision are not true by inference. Abramian v. President & Fellows Of Harvard College, Supra. at 112-113.

Complainants argument before this Committee is the Respondent have failed to meet its burden of production at stage two, by rebuttal, of the presumption created by the Complainants prima facie case. The Respondents have failed to articulate a legitimate nondiscriminatory reason for its termination decision , by producing credible evidence showing that the reasons advance were the real reasons.

(a). Complainants Job Performance:

The Respondents claim, that the Complainant was cited numerous times Orally, for poor Job Performance. (Exhibit-C) Problem is they produced no credible evidence to support that claim.

-10-

Facts are, the only evidence the Respondents
had produced to suport this nondiscriminatory reason, has
been the March 1, 2001 Notice of the Complainant being
both suspended and fire.(Exhibit-B)

The fact finder could had properly taken into
account weakness of the Respondents argument, like the
lack of Oral or written warnings. Or the claim that after
suspending the Complainant for One Week, on the date of
March 1,2001(Thursday) the Complainant failed to show up
on Monday March 5, 2001.  So the Respondents terminated on
the date of March 9, 2001.(Exhibit-C) Or the implausibili-
ties. That for six months Complainant had a bad attitude,
was unable to handle constructive criticism; after repeat
edly being warned about poor job performance, the Complain-
ant abandon his job and was allowed to return after his
Wife ask that he be allowed to return.(Exhibit-C) MCAD
could had considered the contradictated reasons for its
action. Fuentes v. Perskie, 32 F.3d. 759, 765(3d. Cir. 1994)

(b). Disparate In Treatment:

Complainant states, disparate treatment under
M.G.L.Ch. 151B, § 4(1) is not complete without proof that
the Complainants termination was pretext for racial
discrimination by showing that similarly situated RAC
employee were treated differently. Smith College v. MCAD,
376 Mass. 221, 231(1978); Matthew v. Ocean Spray Cranberries
Inc. Supra. at 128.

Because smoking gun evidence of Discrimination
is rare, the Complainant must carry the burden of persuasion
with circumstantial evidence that convinces the MCAD that

-11-

        proffered explanation of Respondents was not
credible. And that evidence that is relevant in showing
pretext, was the RAC Unit 1554 former Route One employees
Doug Angle, Donny Cruz, Eric Costello and Kevin.(Exhibit-
A,C,D,F)

        Complainant has sworn through MCAD complaint,
that the Complainant was assigned to RAC Unit 1554 Route
One as a Collection Manager, replacing Donny Cruz, whom
was reassigned to transportation at RAC Unit 1554.(Exhibit-
A,D,F) Further the Complainant had sworn, that the Route
One at RAC Unit 1554, was the toughest route in the unit.
(Exhibit-A,D,F) And as proof, the last Two individuals to
assigned that route, had failed to close it.(Exhibit-A,D,
F) One being reassigned to transportation and the other
being promoted to Assistant Manager.(Exhibits-A,D,F)

        In addition, the Complainant has sworn through
MCAD Complaint, that the RAC Unit 1554 in December 2000,
had won the citation of Unit of the month, a citation
given to RAC Units whom produce the most rentals for the
month.(Exhibit-D) Only that the citation was taken from
the RAC Unit 1554 in January 2001, when it was discoveried
that Eric Costello, had produce several fake rental agree-
ments.(Exhibit-D)

        Complainant has sworn through MCAD Complaint,
that neither Doug Angle, Donny Cruz and or Eric Costello
had been suspended nor terminated as a result their action
Supra.(Exhibit-A,D,F)

        Complainant states for the purpose of disparate
treatment analysis, Angle and Costa, need not hold identical
Job descriptions or tenure. What counts is the actual job
performance and content not job title. Equal Employment
Commission v. Sears Roebuck & Co. 839 F.2d. 302, 344(7th
Cir. 1988)

-12-

Doug Angle and Donny Cruz, being similarly situated as RAC Unit 1554 Route One collection Managers, whom were treated very differentl. Whom were similarly situated in terms of performance, qualification and conduct. Smith v. Stratus Computer Inc. 40 F.3d. 11, 17 (1st Cir. 1994).(Exhibit-A,C,D,F)

The Commission findings here, have to be that July 29, 2003, findings are not supported by substantial evidence.Lynn Teacher Union Local 1037 v. MCAD, Supra. at 527.

Respondents were quite on this issue of disparate treatment.(Exhibit-C) And the explanation that they did offer(Exhibit-C) well again, the Complainant ask that it (MCAD) follow Cohen v. Board Od Registration In Pharmacy, 350 Mass. 246, 253(1966) And evaluate the substantiality of the evidence before the Commission, and consider anything in the record that fairly detracts from the weight or burden of the Respondent articulation reason for the disparate of treatment between the Complainant, Donny Cruz, Doug Angle and Eric Costello.

(c). Discriminatory racial hiring practice;

Again, that Complainant claimed, that the Respondent Costa, had from the date of July 2000-February 2001. Discriminated against Non-Hispanic employees at the RAC Unit 1554.(Exhibits-A,D,F) As evidence, the Complainant claimed to had been passed over for promotion by Eric Costello, Robert De La Rosa and Sam.(Exhibits-A,D,F) all Hispanic Employees hired after the Complainant whom all

-13-

had less experience and training than the
Complainant.(Exhibits-A,D,F)

Complainant additional sworn through MCAD
complaint, that the Respondent Costa, transferred Non-
Hispanic's to other RAC Unit, from the RAC Unit 1554
and replaced those transferred with newly hired Hispanic's.
(Exhibit-D)

Complainant had additionally sworn, that the
Respondent Costa, promoted Keith Bodden, a then RAC Unit
1554, Hispanic Inside/Outside Assistant to Assistant
Manager, while at all times having a Assistant Manager
Doug Angle, assigned to the RAC Unit 1554.(Exhibit-D)

Complainant further sworn, that the Respondent
Costa, promoted Keith Bodden, to Manager of the RAC Unit
1554. Over and around the white Assistant Manager Mr. Angle.
(Exhibit-D)

Respondents is face of the evidence <u>supra</u>.
denied, that they racially discriminate against Non-Hispanic's
And that they hadn't discriminated against the Complainant.
(Exhibit-C) That in fact, Keith Bodder, was African American.
(Exhibit-C) MCAD findings of July 29, 2003. Is not supported
by credible evidence, and their findings connot be supported
by substantial evidence.

(d). <u>Non-material issue of deceiptiveness</u>

Despite this being a non-issue of material fact,
MCAD, gave great weight to this materially false assertion
that the Complainant had failed to answer correctly to
the question on the Complainant Job Application, of
whether the Complainant had been convicted of a felony.
Complainant states, that they Complainant had never ommitted

-14-

the fact that the Complainant had been convicted
of a felony.(Exhibit-D) Only that the Complainant has
sworn that the Complainant has never been arrested or
charged in any state in the world with First Degree
Murder.(Exhibit-D) But more importantly, Complainants
alleged ommission, was not the basis of the Complainant
discharge. Nor a fact known at the time of the Complain-
ants termination.Pricewaterhouse v.Hopkins, 490 U.S. 228,
252(1989).(An employer may not prevail by offering a
legitimate and sufficient reason for its decision if
that reason did not motivate it at the time of the decision)
This is because the antidiscrimination statutes have a
proplylactic purpose beyond the particular employee
concerned. McKennon v. Nashville Banner Pub. Co. 513 U.S.
352, 356-360(1995) The complainant has claimed discrimin-
ation based on race, as the reason the Respondents had
terminated Complainant. Respondent may not be absolved of
the consequences of that unlawful act by now discovery of
this alleged omission of alleged felony conviction, in
Job Application. Smith  v. Scanning Inc. 876 F.2d. 1315,
1319(7th Cir. 1989)


(e). Retaliation:

To succeed on a retaliation claim the Complainant
must prove that he reasonable and in goodfaith believed
that Respondents engaged in wrongful discrimination,
that Complainant acted reasonably in response to that
belief, and tha the Respondents desire to retaliate against
Complainant was a determinative factor in the decision to
take an adverse employment action.Abramian v. President &
Fellows of Harvard College, Supra. at 121.

-15-

Complainant states, that the Complainant had a
up hill battle establishing, that the Respondent Costa's
decision to terminate the Complainant, was as a result of
the Complainants taking off the Martin Luther King, Jr.,
Holiday(Exhibits-A,D,F) absence the requested Production
of Documents and Requested Interrogatories of the Respond-
ent Costa.(Exhibits-G,H) As Requested Discovery would
certainly established a pattern of Discriminatory Hiring
practice at several of the Respondents Unit, and through
inference. Evidence that ask the question if the Units
1535 & 1543 RAC Units both in Brockton, Massachusetts, two
Block from one another(317-319 Belmont Street Brockton
Mass. 02301/728 Belmont Street Brockton, Mass 02301 are
the White and Non-White RAC, further the racial make up
of their Collection managers; Whether the RAC Units 1542
and 1541, Collection Managers mirror image of their
Communities) Whether there is a reason for those Units
and similar Units, Collection Manager reflecting there
individual communities.

Complainant would had established, with the
assistance of Discovery, that at all times relevant to the
Martin Luther King, Jr., Holiday, the Respondent Costa had
believed all RAC Unit 1554 Collection Managers were
Hispanic. And that it was on that date that the Respondent
discoveried that the Complainant was not, and began to
effect the process of removing the Complainant. Was this
evidence before the investigator? In part, yes.

III.  <u>FINDINGS ARE BASED UPON ABUSE OF DISCRETION AND
NOT IN ACCORDANCE WITH LAW:</u>

-16-

Its a proven fact, that when proceedings are so
spread out, that the fabric of the evidence loses it
shape and the impressions of witnesses loses sharpness.
That two years four months have come and gone, before you
reach the point of a decision aggravates the staleness of
the evidence and the sense of unease about whether the
investigator had a grip on the evidence.(Exhibits-A,B,C,D)
And at all times it must be known, that the Complainant
was subjected to the distressing uncertainty.

Investigator scheduled One Hearing in those
two year four months.(Exhibit-K) That the Respondent
decided not to attend. This inordinate delay is not
justified based on the record or findings by the MCAD.

It is easy for the Complainant to lash out at
the Commission, as Complainant has lost the first round
of this process. Gunther v. Gap, Inc. 1 F.Supp. 2d. 73,
78(D.Mass. 1998)(MCAD issued a lack of probable cause
finding here also.) Complainant might had misstep somewhere
and played a part in this adverse decision. But the
Complainant is truely offended, that the MCAD gave no
weight to my evidence.(Exhibits-A,D,F) As the MCAD July 29,
2003 findings appear to be a summary of the Respondents
Position Statement. Load with materially false assertions
of fact.

Despite this decision, Complainant believes that
the MCAD are persons to be of good judgment and common
experience. And are not tabulae rasea on which smooth tongued
or forceful lawyers can easily impress their desired outcomes.
That the MCAD possess a certain measure of sophistication in
sorting out excessive claims on both sides particularly
the capability of sorting out half truths. Guided by those
principle Complainant has asked for reconsideration of its
July 29, 2003 Findings and decision dismissing Complainants
matter for lack of probable cause.

-17-

IV. <u>FINDINGS ARE IN CONFLICT WITH CONSTITUTIONAL PROVISIONS</u>:

Complainant states, that the Complaianant objects to the findings of the MCAD dated July 29, 2003 based on the MCAD's failure to enforce Complainants timely Request for both Discovery and Interrogatories.(See Exhibit-G,H)

Complainant relied on the Investigatories promised investigative process. (See Exhibit-L)

It is apart of the MCAD, that they may among other things issue written Interrogatories, Subpoena the Production Of Documents or take Depositions when necessary to preserve testimony. (See 804 C.M.R. § 1.13(2); 804 C.M.R. § 1.14(2). Complainant detrimentally relied on MCAD procedures.(See Exhibit-L)

Complainant states, that the Complainant requested both the Request For Production Of Documents from the Respondents as early as June 4, 2001. And again on the date of June 12, 2003.(See Exhibits-D,G) And Complainant reliance on the procedure was great.(See Exhibits-C,I,J,L)

Respondents have deceived the MCAD and the public of the Commonwealth of Massachusetts, on the very material issue of Discrimination; Racial Hiring perference, when the stated that the Respondents did not discriminated against the Complainant because his was African American, or perfer Hispanic speaking employees over non-Hispanic speaking, and as proof, Mr. Smith managers Keith Bodder, is African American and Mel Perdomo, is Italian American, neither speak Spanish. These statements are materially false.(Exhibit-C,I,J,L)

-18-

Again, the Respondents sworn statement, that they never treated similarly situated Rent-A-Center Employees different is materially false. And the Complainant relied on MCAD Procedures to prove that.(See Exhibit-C,G,H,L)

Further, Discovery of Documents would had shown that Respondents non-discriminatory reason for terminating the Complainant was materially false.(See Exhibits-C,G,H,L)

Complainant states, under 804 C.M.R. § 1.13(7) Complainant was entitled to predetermination discovery, and was denied that timely requested discovery. Which the Complainant detrimentally relied upon.(See Exhibits-C,G,H,L)

The MCAD has authority to receive, investigate and adjudicate complaints of unlawful practies as defined by M.G.L.Ch. 151B, § 3 (6). And Complainant relied upon this statute, for such beliefs. And the denial of procedural Due Process in accordance with 804 C.M.R. § 1. violated both the governing statute but the provision of the State.

Complainant ask that the Commission Reconsider it's July 29, 2003. Decision and Findings.

Submitted By

Marvin M. Smith
2251A Washington Street
Newton, Massachusetts 02462
(617) 965-8682

## CERTIFICATION OF SERVICE

I Marvin M. Smith, certify, that I have cause the service of the foregoing Motion For Reconsideration of MCAD's July 29, 2003 Decision/Findings Dismissal For Lack Of Probable Cause/Complainant's Memorandum Of Law In Support Of Complainants Motion Of Appeal, to be served on Respondents Counsel Robert F. Friedman, Law Office of Winstead Sechrest & Minick 5400 Renaiss-ance Tower 1201 Elm Street Dallas, Texas 75270, by mailing the same United States Postal Service, certified mail on this date of October 2003.

Marvin M. Smith

The Commonwealth of Massachusetts
Commission Against Discrimination
One Ashburton Place, Room 601, Boston, MA 02108

NOV 2 0 2003

Marvin M Smith
2251A Washington Street
Newton, MA 02462



      RE: Marvin M Smith v. Rent-A-Center, Inc.
      MCAD DOCKET NO: 01130691

Dear Parties:

    On October 8, 2003 a preliminary hearing was held regarding the above reference complaint to consider the Complainant's appeal of lack of probable cause finding issued in this Complaint on July 29, 2003.

    Based upon information presented at the appeal hearing and a review of the evidence adduced in investigation, I have determined that the <u>Lack of Probable Cause</u> finding in this case is affirmed. This means that investigation and appeal evidence fails to establish sufficient evidence to determine that an unlawful act of discrimination has been committed.

    All employment complaints where applicable, are dual filed with the U.S. Equal Employment Opportunity Commission (EEOC). Our finding will be forwarded to its Area Office, JFK Federal Building, Boston, MA 02203. The MCAD finding will be given substantial weight by the EEOC provided that such finding are in accordance with the requirements of Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act of 1967, and or The Americans with disabilities Act of 1990.

                  Very truly yours,

                  Walter J. Sullivan, Jr.
                  Investigating Commissioner

cc: Robert F. Friedman
    Winstead
    5400 Renaissance Tower
    1201 Elm Street
    Dallas, TX 775270

August 22, 2004

Marvin M. Smith
W-81728
Old Colony Correctional Center
One Administration Road
Bridgewater, Massachusetts 02324

Michael Joseph Donovan, Clerk Of Court
Suffolk Superior Court
U.S. Post Office & Courthouse
90 Devonshire Street
Boston, Massachusetts 02108


RE: Notice of Change In Address of Plaintiff Marvin M. Smith v.
    Rent-A-Center, et al. No. 03-5898-A:


Dear Clerk Of Court:

        Please be advised of the Plaintiff's change of Address
to:

                Marvin M. Smith
                W-81728
                One Administration Road
                Bridgewater, Massachusetts 02324

        Please Notice Plaintiff's change of address to that above.


CC
Kevin Bell                          Marvin M. Smith
William Costa
Roger Iverson
Rent-A-Center, Inc.
Attorney Robert Friedman